**2015-1073**

In The

# United States Court of Appeals

### For The Federal Circuit

## SCHOTT GEMTRON CORPORATION,

*Appellant*,

## v.

## SSW HOLDING COMPANY, INC.,

*Appellee*.

**APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE, PATENT TRIAL AND APPEAL BOARD IN CASE NO. IPR2013-00358**

———————————

## BRIEF OF APPELLEE

———————————

Nathaniel L. Dilger
William J. O'Brien
Kainoa Asuega
ONE LLP
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, California  92660
(949) 592-2870

*Counsel for Appellee*

THE LEX GROUP[DC] ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C.  20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

# Certificate of Interest

Counsel for the Defendant and Appellee, SSW Holding Company, Inc., certifies as follows in accordance with Federal Circuit Rule 47.4 and Federal Rule of Appellate Procedure 26.1:

1.  The full names of every party or amicus represented in the case by me are:

> SSW Holding Company, Inc.

2.  The name of the real party in interest if the party named in the caption is not the real party in interest:

> Not applicable.  (SSW Holding Company, Inc., is the real party in interest.)

3.  All parent corporations and any publicly held corporations that own 10% or more of the stock of the party represented by me are:

> None

4.  The names of all law firms and the partners and associates that have appeared for the Defendants and Appellees in the lower tribunal or are expected to appear for the party in this court:

One LLP: Nathaniel L. Dilger, William J. O'Brien, and Kainoa Asuega.
Marshall, Gerstein & Borun LLP: Michael P. Furmanek, Jennifer
Burnette, Michael R. Weiner

Dated: April 6, 2015.

Respectfully submitted,

/s/ Nathaniel L. Dilger
Nathaniel L. Dilger
William J. O'Brien
Kainoa Asuega
One LLP
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, California 92660
(949) 592-2870

Counsel for Appellee

# TABLE OF CONTENTS

**Page**

Certificate of Interest ....................................................................i

Table of Contents ...................................................................... iii

Table of Authorities ...................................................................vi

Statement of Related Cases..........................................................1

Jurisdictional Statement ..............................................................1

Issues Presented ..........................................................................2

    A.    Regarding obviousness of the challenged patent claims......................2

    B.    Regarding claim construction..............................................3

    C.    Regarding Gemtron's expert witness, Christopher Schechter..............3

    D.    Regarding the Board's decisions on institution of *inter partes* review ....................................................................4

Statement of the Case...................................................................6

    A.    Background of SSW's Invention .........................................7

    B.    Gemtron copies SSW's patented hydrophobic shelves........................9

    C.    SSW sues Gemtron on the '561 patent, and Gemtron responds by filing a petition seeking *inter partes* review ................................12

        1.    The Angros patent discloses a small microscope slide suitable for use in laboratories ................................12

        2.    The Baumann patent discloses water-repellent self-cleaning surfaces for building materials ....................14

D.     The Board institutes a limited *inter partes* review .............................15

E.     After a full trial on the merits and consideration of both parties' evidence, the Board rejects Gemtron's validity challenge .................16

    1.    Gemtron takes issue with the Board's priority determination, but never raised its priority argument to the Board .................................................................................17

    2.    The Board found that the Angros patent was not "reasonably pertinent" and therefore not analogous art to the '561 patent .........................................................................18

    3.    In addition to finding that Angros was not analogous art, the Board found that—even considering Angros— Gemtron still did not prove the challenged claims were obvious ..................................................................................19

Summary of Argument ...............................................................................20

Argument....................................................................................................23

I.     Gemtron misstates the standard of review .........................................23

II.    The Board had ample basis for finding that the Angros patent is not analogous art ...............................................................................26

    A.    SSW provided abundant evidence that the Angros patent is not analogous art .................................................................27

    B.    Gemtron provided no evidence that persons of ordinary skill would have considered the Angros patent analogous.......31

    C.    The Board correctly understood the problem addressed by the '561 patent.....................................................................33

    D.    The Board correctly construed "spill" ......................................35

III.   Gemtron failed to prove obviousness in other respects as well ..........38

iv

A.     The Baumann patent is not analogous art ..................................38

B.     The Board correctly determined that—regardless of whether Angros were considered analogous art—Gemtron still failed to establish obviousness ...........................40

C.     Multiple objective indicia support non-obviousness ...............46

IV.   The Board's findings as to Christopher Schechter provide no basis for reversal ....................................................................48

A.     Schechter was not of ordinary skill in the art ...........................49

B.     In any event, Schechter did not adequately support Gemtron's invalidity contentions ...............................................53

VI.   The Board's non-institution decisions were appropriate and are not appealable ...................................................................54

A.     The Board's decisions about institution of *inter partes* reviews are not subject to appeal ...............................................54

B.     The Board had good reason for not reviewing the Sikka application ................................................................................60

C.     The Board had good reason for not reviewing alleged anticipation by Angros ............................................................63

Conclusion and Statement of Relief Sought .............................................63

Certificate of Filing and Service

Certificate of Compliance

# Table of Authorities

**Page(s)**

**Cases**

*ArcelorMittal France v. AK Steel Corp.*,
    700 F.3d 1314 (Fed. Cir. 2012) .................................................................27

*Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.*,
    750 F.2d 1569 (Fed. Cir. 1984) .................................................................43

*Consolidated Edison Co. v. NLRB*,
    305 U.S. 197, 59 S. Ct. 206, 83 L. Ed. 126 (1938) ........................................23

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005) .................................................................36

*Disney Enters., Inc. v. Kappos*,
    923 F. Supp. 2d 788 (E.D. Va. 2013) ........................................................51

*Ecolochem, Inc. v. Southern California Edison Co.*,
    227 F.3d 1361 (Fed. Cir. 2000) .................................................................44

*Estee Lauder Inc. v. L'Oréal, S.A.*,
    129 F.3d 588 (Fed. Cir. 1997) ...................................................................32

*Extreme Networks, Inc. v. Enterasys Networks, Inc.*,
    395 Fed. Appx. 709 (Fed. Cir. 2010) ........................................................50

*Flex-Rest, LLC v. Steelcase, Inc.*,
    455 F.3d 1351 (Fed. Cir. 2006) .................................................................43

*Flo Healthcare Solutions, LLC v. Kappos*,
    687 F.3d 1367 (Fed. Cir. 2012) .................................................................25

*In re Bigio*,
    381 F.3d 1320 (Fed. Cir. 2004) ......................................................23, 26, 40

*In re Crish*,
    393 F.3d 1253 (Fed. Cir. 2004) .................................................................25

*In re Cuozzo Speed Technologies, LLC*,
    778 F.3d 1271 (Fed. Cir. 2015) ..........................................................*passim*

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
    676 F.3d 1063 (Fed. Cir. 2012) .................................................................48

*In re Gartside*,
    203 F.3d 1305 (Fed. Cir. 2000) .................................................................23

*In re ICON Health and Fitness, Inc.*,
    496 F.3d 1374 (Fed. Cir. 2007) .................................................................25

*In re Klein*,
    647 F.3d 1343 (Fed. Cir. 2011) ...........................................................26, 31

*In re Morris*,
    127 F.3d 1048 (Fed. Cir. 1997) ...........................................................24, 25

*In re Oetiker*,
    977 F.2d 1443 (Fed. Cir. 1992) .................................................................27

*In re Suitco Surface, Inc.*,
    603 F.3d 1255 (Fed. Cir. 2010) .................................................................25

*In re Watts*,
    354 F.3d 1362 (Fed. Cir. 2004) ...........................................................61, 62

*Innovention Toys, LLC v. MGA Entm't, Inc.*,
    637 F.3d 1314 (Fed. Cir. 2011) .................................................................27

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007).....................................................................................43

*K-TEC, Inc. v. Vita-Mix Corp.*,
    696 F.3d 1364 (Fed. Cir. 2012) ...........................................................33, 38

*Mintz v. Dietz & Watson, Inc.*,
    679 F.3d 1372 (Fed. Cir. 2012) ....................................................................46

*Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*,
    75 F.3d 1545 (Fed. Cir. 1996) ......................................................................44

*Rambus, Inc. v. Rea*,
    731 F.3d 1248 (Fed. Cir. 2013) ....................................................................46

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
    749 F.3d 1373 (Fed. Cir. 2014) ....................................................................59

*Stratoflex, Inc. v. Aeroquip Corp.*,
    713 F.2d 1530 (Fed. Cir. 1984) ....................................................................46

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2008) ....................................................................50

*Velander v. Garner*,
    348 F.3d 1359 (Fed. Cir. 2003) ....................................................................24

*W.L. Gore & Assoc., Inc. v. Garlock, Inc.*,
    721 F.2d 1540 (Fed. Cir. 1983) ....................................................................41

*Wang Laboratories, Inc. v. Toshiba Corporation*,
    993 F.2d 858 (Fed. Cir. 1993) ...............................................................30, 31

*Yorkey v. Diab*,
    601 F.3d 1279 (Fed. Cir. 2010) ....................................................................24

## Statutes

28 U.S.C. § 1295(a)(A)(4) ..................................................................................2

35 U.S.C. § 103 ...........................................................................................16, 45

35 U.S.C. § 141(c) .............................................................................................2

35 U.S.C. §§ 303-04..........................................................................................55

35 U.S.C. § 303(c) ...................................................................59

35 U.S.C. § 312(a) ...................................................................55

35 U.S.C. § 313 .......................................................................55

35 U.S.C. § 314 .......................................................................54

35 U.S.C. § 314(a) ...................................................................54

35 U.S.C. § 314(d) ............................................................*passim*

35 U.S.C. § 316(a)(11) .......................................................1, 55

35 U.S.C. § 316(e) ...........................................................16, 31

35 U.S.C. § 319 .........................................................................2

## Regulation

37 C.F.R. § 42.107(c) ..............................................................16

## Other Authorities

157 Cong. Rec. S1040 (daily ed. Mar. 1, 2011) (statement of Sen. Kyl) ...............56

157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl) ...............56

H.R. Rep. No. 112-98 (2011) ...................................................55

S. Rep. No. 111-18 (2009) .......................................................56

*Patent Reform: The Future of American Innovation: Hearing Before the S. Comm. on the Judiciary,* 110th Cong. 11-12 (2007) ...............................56

# Statement of Related Cases

SSW Holding Co., Inc. v. SCHOTT Gemtron Corp., Case No. 3:12-cv-00661, is currently pending in the United States District Court for the Western District of Kentucky and is stayed because of the *inter partes* review at issue in this appeal.

SCHOTT Gemtron Corp. v. SSW Holding Co., Inc., IPR2014-00367, is currently pending at the Patent Trial and Appeal Board. Although the challenged claims in IPR2014-00367 are different that the claims at issue in this appeal, the patent and the grounds of unpatentability upon which the Board instituted *inter partes* review are the same. Under 35 U.S.C. § 316(a)(11), the one-year deadline for the Board to issue its Final Written Decision in IPR2014-00367 is June 11, 2015.

# Jurisdictional Statement

SSW disagrees with Schott's jurisdictional statement. This appeal arises from a Final Written Decision of the Patent Trial and Appeal Board ("the Board") in an *inter partes* review proceeding. The Board entered its Final Written Decision on August 20, 2014. Gemtron filed a notice of appeal of the Final Written Decision on September 17, 2014. As explained in Section VI of the Argument, *infra*, this Court lacks jurisdiction to review the Board's decision whether to institute the *inter partes* review, which is "final and nonappealable." 35 U.S.C.

§ 314(d). This Court otherwise has jurisdiction over Gemtron's appeal of the Board's Final Written Decision under 28 U.S.C. § 1295(a)(A)(4) and 35 U.S.C. §§ 141(c), 319.

# Issues Presented

SSW disagrees with Gemtron's characterization of the issues on appeal. Gemtron's appeal actually raises the following issues:

**A.     Regarding obviousness of the challenged patent claims:**

1.     Was there substantial evidence to support the Board's finding that "one of ordinary skill in the art of the '561 patent would not have considered the subject matter of [the] Angros [patent], which deals with microscope slides, to be reasonably pertinent to the problem being addressed by the applicants of the '561 patent in designing refrigerator shelves" (A23) where:

    a.     SSW's well-qualified expert, Richard Mills, provided detailed testimony explaining why a person of skill in the art would not have found Angros reasonably pertinent;

    b.     Gemtron submitted no evidence to the contrary, merely attorney argument; and

    c.     Gemtron's witness actually "corroborate[d] the testimony of Mr. Mills" (A22-23)?

2

2.     Was there substantial evidence to support the Board's finding that, "even if Angros did qualify as prior art," Gemtron would still not have shown obviousness, where its evidence was merely unsupported and conclusory "hindsight" (A23, A25), SSW presented detailed evidence that combining the prior art would not have been obvious, and multiple objective indicia show non-obviousness?

**B.     Regarding claim construction:**

1.     Did the Board have a reasonable basis for its construction of "spill" under the Board's "broadest reasonable construction" standard?

2.     Even if the Board erred, can its construction provide a basis for reversal absent any indication that a different construction would have changed the Board's findings on analogous art or obviousness?

**C.     Regarding Gemtron's expert witness, Christopher Schechter:**

1.     Was the Board's finding as to the level of skill in the art supported by substantial evidence, including the '561 patent, the types of problems and solutions described in the '561 patent and cited prior art, and the testimony of the parties' declarants?

2.     Was it an abuse of discretion for the Board to discount purported expert testimony of Gemtron employee Christopher Schechter, when,

at the time of his declaration, he lacked the experience required by the Board's finding as to a person of ordinary skill in the art?

3. Even assuming that the Board should have accepted a broader scope of experience as contended by Gemtron, did the Board's narrower definition prejudice Gemtron absent evidence that Mr. Schechter would have qualified even under a broader definition?

4. Even assuming that Schechter was of ordinary skill, did the Board's contrary finding prejudice Gemtron when the Board also found that "Mr. Schechter's testimony is impermissible hindsight" and that he "fails to provide sufficient reason for why one of ordinary skill in the art at the time of filing would have combined [the asserted] references"?  A25.

**D.**   **Regarding the Board's decisions on institution of _inter partes_ review:**

1. Does this Court have jurisdiction to review the Board's institution decision in the absence of any express statutory authority for such review and despite 35 U.S.C. § 314(d), which provides that such decisions are "final and nonappealable"?

2.    If the Court does review the Board's institution decisions:

    a.    ***Sikka application:***

        i.    Did the Board abuse its discretion in declining to review patentability over the Sikka application, when it was undisputed that two of the three challenged claims had priority before the Sikka application and the Board found that the remaining claim, Claim 13, also had a priority date that precedes the Sikka application?

        ii.    Is Gemtron entitled to challenge on appeal the priority date for the "frit" limitation in claim 13, when Gemtron did not raise that issue before the Board and, as a result, SSW did not have occasion to submit evidence on that issue and the Board did not have occasion to make factual findings on the issue?

        iii.    If Gemtron is entitled to belatedly raise the issue, did the provisional application support the frit limitation by disclosing techniques that include application of frit, such as "powder and liquid pyrolysis," "screen printing," and "glass powder"?

b.    ***Angros application:***

i.    Did the Board abuse its discretion in declining to review anticipation by the Angros patent, when Angros did not disclose features required by the challenged claims, such as a "shelf"?

ii.    Even assuming that the Board should have reviewed anticipation by Angros, would that provide a basis for reversal in view of the Board's findings about non-obviousness in view of Angros, and absent a showing of prejudice?

## Statement of the Case

SSW disagrees with Gemtron's statement of the case. This appeal arises from the *inter partes* review of SSW's Patent No. 8,286,561 by the Board in IPR2013-00358. Gemtron appeals from the final written decision of the Board as well as the Board's interlocutory decision not to institute *inter partes* review on two grounds. Gemtron has omitted—or failed to clearly set forth—several important facts about the merits of the Board's Final Written Decision as well as its institution decision. In the sections below, SSW therefore summarizes the invention of the '561 patent, the asserted prior art, the *inter partes* review proceedings, and the evidence.

6

## A.     Background of SSW's Invention.

The '561 patent covers certain innovative "spill proof" appliance shelves, particularly glass shelves found in household refrigerators. A401-02. The patented technology uses a hydrophobic surface to contain spills of milk, soda, and other fluids and prevent them from flowing off the shelf and into the refrigerator or out onto the floor. *See* A402-03; A1689-90; A1707-08; A1721-22; A1747-48. Before SSW's patented design, "spill proof" refrigerator shelves typically required a raised plastic border or rim around the periphery of the refrigerator shelf. *See id*. An example of such "encapsulated shelves" is shown below. As shown, the encapsulated shelf includes a raised plastic border 56 that provides a physical spill containment barrier. *Id*.



While more or less effective at containing spills, encapsulated shelves had several significant drawbacks, which were well known in the art. The plastic edging required for encapsulated shelving reduced the amount of usable shelf space; the joint between the plastic edging and the shelf (known in the industry as a "crud crack") collected dirt, food, and spilled liquids, making the shelves harder to clean; the plastic edging created a cluttered, unattractive, and outdated aesthetic; and encapsulated shelves had a tendency to leak, particularly when a spill was not immediately cleaned. *See* A403-04; A1725-28; *see also* A1689-90; A1707-08; A1721-22; A1747-48; A1598-1644.

Faced with these drawbacks, the '561 patent inventors sought to design an appliance shelf that was still effective at containing spills but was more hygienic, easy to clean, and aesthetically attractive than encapsulated shelves and—most importantly—maximized the usable "real estate" for holding articles on the shelf. See A1728-29. As the '561 patent teaches and the Board concurred, "the problem faced by the inventors of the '561 patent was not simply how to contain liquids in a predetermined area—it was how to maximize the available storage space on shelves while containing accidental and unpredictable spills." A20; *see* A857.

The invention conceived by the '561 patent inventors is both innovative and elegant. They invented a spill-proof shelf assembly that uses a hydrophobic border or pattern applied flush on the top surface of the shelf, rather than using a obtrusive

8

plastic rim.  *See* A857; A1723-24.  The photos below illustrate testing of SSW's

patented design:

 

A402; A192; A1729; A1749.

As shown above, the inclusion of a hydrophobic spill containment pattern on

the shelf surface effectively prevented spills (for example, milk or soda) from

running off the edge of the shelf, ***without the use of any raised structures or***

***barriers***.  The claimed invention thus allowed an otherwise flat piece of glass to be

nonetheless spill proof, without any intrusion into the usable shelf space.  The

patented shelf assemblies are also more aesthetically appealing and easier to clean

than encapsulated shelves.  *See* A402; A1728-29.

### B.    Gemtron copies SSW's patented hydrophobic shelves.

SSW was not alone in recognizing the benefits of its hydrophobic spill-proof

shelf.  After SSW's customer Whirlpool adopted the new technology, Gemtron

(SSW's direct competitor and the Appellant here) quickly sought to copy SSW's patented design.

In October 2008, SSW disclosed its invention to Whirlpool, showing Whirlpool a prototype of the patented product, which SSW referred to as the "NANO Shelf."



Water evaporates from NanoSHelf in 72 hrs and never "leaks".

A1770; A1710.

Within three days of seeing the prototype, Whirlpool asked SSW for a price quotation. *See* A1772-73; A1710. There followed seven months of meetings, presentations, demonstrations, and correspondence, during which SSW described the patented design to Whirlpool in detail. *See* A1709-12. SSW summarized the features it had disclosed to Whirlpool in a May 21, 2009 engineering drawing. *See* A1785-86; A1712.

In June 2009, Whirlpool copied the information from this SSW drawing specification onto Whirlpool's own, internal drawing specification. *See* A1792; A1713-14. Whirlpool's version described the same patented features disclosed to it by SSW (such as applying hydrophobic treatment "to the 'ceramic frit' area of the glass"), and even used SSW's terminology for the project, "NANO."







A1713-14.

SSW began supplying its hydrophobic shelves to Whirlpool and—until approximately February 2011—was the sole supplier of such shelves. A1689-90; A1750. But in early 2011, Whirlpool contacted Gemtron, one of SSW's competitors, about acting as a second supplier of hydrophobic shelves built according to SSW's design. Whirlpool provided Gemtron with a drawing

specification that identically copied SSW's patented features, including a

hydrophobic border arranged on the periphery of the shelf surface for containing

spills.  A1793-95; A1714-15.  Using this information, Gemtron made copies,

which Gemtron sold to Whirlpool.  A1793-95; A1715-16.

## C.    SSW sues Gemtron on the '561 patent, and Gemtron responds by filing a petition seeking *inter partes* review.

Seeking protection against Gemtron's infringement of the '561 patent, SSW

filed a complaint against Gemtron in the Western District of Kentucky, Case No.

3:12-cv-00661.  In response, Gemtron filed the *inter partes* review petition that is

the subject of this appeal.  While Gemtron describes some aspects of its IPR

petition correctly, Gemtron's description badly misses the mark in several respects,

including Gemtron's description of the Angros and Baumann references.

### 1.    The Angros patent discloses a small microscope slide suitable for use in laboratories.

Gemtron's appeal relies heavily on the Angros patent (A1053-60), which

describes a microscope slide used for microscopic examination of miniscule

samples.  The object of Angros was to provide a microscope slide (also referred to

as an "analytic plate") with a "substantially transparent" and "substantially flush"

border, which the patent describes as preferable to opaque borders.  A1057. Angros

discloses a small microscope slide having a border with a hydrophobic material for

holding a sample in place on the slide during microscopic examination by, for example, a lab researcher or technician.  *See* A1053.

The hydrophobic border of Angros is not used for containing ***spills***, and, from the point of view of a person of skill in the art, Angros discloses nothing about spill containment.  *See* A1733-37. The border in Angros is instead used to hold miniscule drops of liquid (such as blood, urine, plasma, or cerebral or spinal fluid), which are purposely and specifically "placed upon" the holding area of a microscope slide.  *See e.g.*, A1057.

Angros also does not disclose any sort of "shelf" or "shelf panel."  *See*, *e.g.*, A1719; A1733-37.  The Board construed the term "shelf panel" recited in the '561 claims as "a piece of material positioned horizontally at a distance above some other surface to hold objects."  *See* A252-54.  The small microscope slide of Angros is not such a structure.  As shown in the diagram below, a microscope slide is placed ***directly*** on top of the microscope's table or "stage" and is therefore not positioned horizontally at a distance above that surface.  A406.



A407.

Angros taught that an advantage of his invention was that it did not require any pretreatment or intervening layer between the liquid repellant coating and the slide. Angros indeed expressly *criticizes* prior art borders that include intervening layers, such as adhesives, as being susceptible to peeling, which reduces the border's liquid confinement efficiency and integrity. A1058.

### 2. The Baumann patent discloses water-repellent self-cleaning surfaces for building materials.

Gemtron also relies on the Baumann patent, which discloses self-cleaning surfaces for glass, ceramic, and metal substrates. A1078-85. The Baumann patent explains that these are suitable "for glazing vehicles and trains and for glass bricks" as well as "building material such as roof tiles, clinker and floor tiles." A1083. Such building materials and vehicles are dramatically different from the field of endeavor of the '561 patent, which is shelf assemblies for supporting

14

articles that would be typically found in pantries, on counters, on stovetops, on cook-tops, on table tops, in refrigerators and freezers, and the like.  A1719-20.

The self-cleaning surfaces of Baumann include a micro-rough surface structure arranged entirely across the surface of the substrate and burnt to be made at least partly hydrophobic.  *See* A1078.  The self-cleaning substrate eliminates water and dirt.  A1081.  From the point of view of a person of ordinary skill, the purpose of the Baumann patent is  "***directly opposite*** to the intended objective of the '561 Patent."  A1742.  Baumann seeks to provide a "self-cleaning surface" that is "virtually unwettable by water and preferably by other liquids, so rapid drop formation becomes possible and dirt particles deposited are washed away in a simple manner with the drops running down."  A1084; A1081; *see* A1741-43.  In contrast, the objective of the '561 patent "is to ***contain*** spills" by retaining them on the surface.  A1742.

To achieve the desired elimination of liquids, Baumann's coating is applied to the ***entire*** surface of the article.  *See* A1078; A1081.  Nothing in Baumann discloses or suggests applying the coating to less than the entire surface, as is claimed in the '561 patent.  *See id*.

### D.    The Board institutes a limited *inter partes* review.

In its petition, Gemtron asserted nine grounds of alleged invalidity.  The Board granted *inter partes* review of two of those nine grounds.  A265.

Gemtron wrongly suggests that the Board's institution of *inter partes* review constituted "endorsement" of Gemtron's arguments. The Board instituted review using the lenient "reasonable likelihood" standard. A248. But the review itself (or "trial") placed Gemtron under a higher burden of "preponderance of the evidence," which Gemtron was unable to meet. A31; *see* 35 U.S.C. § 316(e). And the Board's decision to initiate *inter partes* review was made without the benefit of SSW's expert's testimony, SSW's cross-examination of Gemtron's proffered expert, and SSW's evidence of secondary considerations. *See infra*, Argument §§ II-IV; 37 C.F.R. § 42.107(c).

### E.    After a full trial on the merits and consideration of both parties' evidence, the Board rejects Gemtron's validity challenge.

In its Final Decision, the Board determined that Gemtron did not prove by a preponderance of the evidence that the subject matter of claims 1 and 25 of the '561 patent is unpatentable under 35 U.S.C. § 103 over the teachings of Angros and Picken, nor that the subject matter of claim 13 of the '561 patent is unpatentable under 35 U.S.C. § 103 over the teachings of Angros, Picken, and Baumann. A31. Gemtron fails to accurately describe the reasons for the Board's determinations.

**1.    Gemtron takes issue with the Board's priority determination, but never raised its priority argument to the Board.**

The '561 patent claims priority of two provisional applications: U.S. Provisional Application No. 61/133,273, filed June 27, 2008, and U.S. Provisional Application No. 61/216,540, filed May 18, 2009.  A11.  Before the Board, Gemtron argued that the challenged claims could not claim priority to these earlier provisional applications because they supposedly did not provide adequate written support for several claim limitations, including the limitation of a "shelf panel having a generally flat top surface," the limitation of a shelf panel "where the majority of the surface area of said top surface of the shelf panel is not hydrophobic," and the steps recited in claim 25 for manufacturing a shelf.  A11-16. The Board rejected these arguments—a determination that Gemtron does not challenge on appeal—and accordingly found that the challenged claims were supported by the earlier, '273 provisional application.

Gemtron misleadingly states that "the Board concluded that the First Provisional alone provided written description for all of the challenged claims without explaining how the First Provisional provided any disclosure of the frit limitations in claim 13."  Appellant's Br. at 24.  Gemtron ***never*** argued to the Board that the '273 application lacked support for the frit limitation, so of course the Board did not address that issue.  *See* A126-29 (Gemtron's petition); A11-16

17

(Board's order addressing the priority issues that Gemtron had raised). Further, because Gemtron did not raise the issue before this appeal, SSW never had occasion to present evidence regarding the '273 application's disclosure of frit (which it does indeed disclose, *see* A900-01).

### 2. The Board found that the Angros patent was not "reasonably pertinent" and therefore not analogous art to the '561 patent.

Gemtron wrongly states that the Board found the Angros patent was not analogous art "based on the [Board's] conclusion that [Angros] deals only with the intentional release of liquid." Appellant's Br. at 22. In reality, the Board rejected the Angros patent because "one of ordinary skill in the art of the '561 patent would not have considered the subject matter of Angros, which deals with microscope slides, to be reasonably pertinent to the problem being addressed by the applicants of the '561 patent in designing refrigerator shelves." As the Board noted, the problem faced by the '561 patent inventors was "not simply how to contain liquids in a predetermined area—it was how to maximize the available storage space . . . while containing accidental and unpredictable spills." A20.

The Board indeed pointed out that the Angros patent was "directed to the containment of miniscule amounts of liquids that are intentionally placed on a microscope slide." A21. But the Board went much further than this, also finding "that a person having ordinary skill in the art of the '561 patent would not have

considered Angros' microscope slides when developing a spill-containing shelf for refrigerators, freezers, pantries, etc." A22-23.   According to the Board, this finding was supported not only by the testimony of SSW's expert witness, Mr. Mills, but also the testimony of Gemtron's own employee and purported expert, Christopher Schechter:

> Mr. Schechter, an employee of, and witness for, Petitioner, corroborates the testimony of Mr. Mills.  Mr. Schechter testified that during the course of his work for Petitioner, he familiarized himself with the state of the art by reviewing "patents focused primarily on the consumer appliance industry" and occasionally reviewed technical publications, technical data sheets, and manuals for production equipment. Mr. Schechter, however, testified that microscope slides are not something with which he works in his work for Petitioner, and could not recall any instance where he reviewed patents or publications (other than Angros) related to microscopes. In fact, Mr. Schechter testified he did not find Angros during a prior art search; rather, it was given to him by legal counsel. We credit the testimony of both Mr. Schechter and Mr. Mills.

A22-23 (citation omitted).  The Board also found that Gemtron had not "cite[d] any testimony (from Mr. Schechter or otherwise) stating that Angros is analogous art to the '561 patent or explaining why that would be the case."  A23.

### 3.    In addition to finding that Angros was not analogous art, the Board found that—even considering Angros—Gemtron still did not prove the challenged claims were obvious.

Gemtron misleadingly indicates that the Board's finding Angros to be non-analogous "was the foundation for the Board's holding that [Gemtron] failed to establish by a preponderance of evidence that the challenged claims are obvious.

Appellant's Br. at 32.  In reality, the Board made it clear that—even apart from whether Angros was analogous—Gemtron had fallen far short of meeting its burden of proof.  For example, the Board found that, "***even if Angros did qualify as prior art***, Petitioner has not shown that the combination of Angros with Picken would have rendered claims 1 and 25 obvious."  A23 (emphasis added).  The Board pointed out that Gemtron relied solely on the testimony of Mr. Schechter, which the Board characterized as "impermissible hindsight" without "sufficient reason for why one of ordinary skill in the art at the time of filing would have combined these references" to recreate SSW's claimed invention.  A25.

## Summary of Argument

The Board here issued a thorough and well-reasoned Final Decision confirming the patentability of claims 1, 13, and 25 of the '561 patent.  Gemtron's counsel disagree with the Board's factual findings, but they have no actual ***evidence*** contradicting those findings.  There can be no serious question that the Board's findings are supported by substantial evidence—which dooms Gemtron's appeal.

For example, the Board had ample evidence to support its finding that the Angros patent was not analogous art—and Gemtron provided ***no evidence*** that a person of skill in the art would have found Angros "reasonably pertinent" to the problem faced by the '561 patent inventors.  Gemtron's proffered expert—an

employee who was of less than ordinary skill—did not even address the question of whether the microscope slides in the Angros patent would be considered analogous to the refrigerator shelves in the '561 patent.

Gemtron's argument that one of ordinary skill would have considered the claimed invention merely a "scaled up" version of Angros's microscope slide is, again, merely argument.  Gemtron again cannot point to any testimony—in Mr. Schechter's declaration or elsewhere—that says that a person of skill in the art would have understood Angros in that way.  On the contrary, SSW's expert, Robert Bruce Mills, says the opposite—without contradiction by Gemtron's expert.

Nor does Gemtron have any evidence to support its implausible contention that one of ordinary skill in the art would have found it obvious to create the claimed invention by combining the microscope slide of Angros with the self-cleaning building materials of Baumann and the refrigerator shelf of Picken.  As the Board correctly found, Mr. Schechter's wholly conclusory assertions about obviousness failed to provide the necessary "articulated rationale" for combining the asserted prior art and relied entirely on hindsight.

Gemtron's appeal thus fails for multiple reasons.  The Board appropriately found that the Angros patent was not analogous art and that one of ordinary skill attempting to create a spill proof barrier that maximized shelf space would not look to microscope slides for the solution.  And the Board appropriately found that

Gemtron's asserted prior art—even including the Angros patent—did not teach the claimed invention absent impermissible hindsight.  In addition, unrebutted evidence supports numerous objective indicia of non-obviousness.  These include a long-felt but unfulfilled need for SSW's invention and initial skepticism and surprise about its success.  Also, Gemtron failed to independently solve the problem addressed by the invention—and Gemtron then copied the drawing specifications for SSW's patented product.  SSW's patented hydrophobic shelves have enjoyed commercial success and widespread acclaim from trade and general publications (including the *Wall Street Journal*), SSW OEM customers (such as Whirlpool and Viking), and refrigerator users.

Gemtron filed its IPR petition to stay SSW's infringement suit and thus prolong Gemtron's unauthorized manufacture and sale of infringing hydrophobic refrigerator shelves.  Even under the Board's relatively lenient standard of proof, Gemtron failed to invalidate the challenged claims.  The Court should affirm the Board's Final Decision confirming the claims' patentability and free SSW to protect itself from Gemtron's continuing infringement.

# Argument

## I.     Gemtron misstates the standard of review.

Gemtron correctly concedes that this Court reviews the Board's factual findings merely to confirm that they are supported by "substantial evidence." Appellant's Br. at 33-34.  "The 'substantial evidence' standard asks whether a reasonable fact finder could have arrived at the agency's decision . . . ."  *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000).

> Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .  Mere uncorroborated hearsay or rumor does not constitute substantial evidence.

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938), *quoted in Gartside*, 203 F.3d at 1312.

Importantly, Gemtron fails to note that whether prior art is analogous is itself one of the factual questions subject to that "substantial evidence" standard.  *See In re Bigio*, 381 F.3d 1320, 1324 (Fed. Cir. 2004).  This point is fatal to Gemtron's appeal, because there was unquestionably substantial evidence indicating that the Angros patent on which it relied was not analogous art.  *See infra* part II.

In addition, Gemtron attacks the Board's decision about how much weight to give to the testimony of Gemtron's employee and purported expert witness, Christopher Schechter, but Gemtron fails to acknowledge that this was an exercise

of discretion, which is entitled to deference on appeal. *See Velander v. Garner*, 348 F.3d 1359, 1371 (Fed. Cir. 2003) ("It is within the discretion of the trier of fact to give each item of evidence such weight as it feels appropriate"); *Yorkey v. Diab*, 601 F.3d 1279, 1284 (Fed. Cir. 2010)("We defer to the Board's findings concerning the credibility of expert witnesses. . . .  Thus the Board was well within its discretion to give more credibility to Baura's testimony over Causevic's ***unless no reasonable trier of fact could have done so***." (emphasis added)).

Further, Gemtron fails to recognize that *de novo* review of the Board's claim construction cannot be assumed where—as here—the appellant is challenging whether the construction was broad enough to fulfill the Patent and Trademark Office's "broadest reasonable construction" standard.  That standard is a creation of the Office—not the Courts—and it is broader than the standard that would be applied in litigation.  The Federal Circuit permits the Office to use the "broadest reasonable construction" standard as a matter of deference to the Office's discretion—not because the Court mandates use of a broader standard in the Office than in litigation.  *See, e.g., In re Morris*, 127 F.3d 1048, 1054-55 (Fed. Cir. 1997)(declining in the wake of *Markman v. Westview* to "require" the Office to change its standard, and agreeing that precedents "permit" the Office to give claim language its "broadest reasonable interpretation").  Accordingly, the most appropriate standard to use in the present context is "whether the PTO's

interpretation of the disputed claim language is 'reasonable.'" *In re Morris*, 127 F.3d at 1054. "This deferential 'is the Board's decision reasonable' standard for review of Board claim constructions, pronounced in *Morris,* has been followed by a number of Federal Circuit cases since then . . . ." *Flo Healthcare Solutions, LLC v. Kappos*, 687 F.3d 1367, 1377 & n. 7 (Fed. Cir. 2012) (additional views of Circuit Judge Plager) (citing *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1259 (Fed. Cir. 2010); *In re ICON Health and Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007); and *In re Crish*, 393 F.3d 1253, 1256 (Fed. Cir. 2004).

While the Court failed to recognize this deferential standard in the recent decision *In re Cuozzo Speed Technologies, LLC*, 778 F.3d 1271 (Fed. Cir. 2015), there is no indication in that decision that either party proposed that standard to the Court or brought the applicable case law to the Court's attention. In any event, "*Morris,* as one of the first of the cases to pronounce on this issue with its '**reasonableness'** standard, is presumptively the controlling precedent until overturned by the court *en banc* or by the Supreme Court." *Flo Healthcare Solutions*, 687 F.3d at 1378. While the Board's claim construction was appropriate under any standard of review, the "reasonableness" standard of *Morris* renders Gemtron's arguments against the Board's construction utterly implausible.

**II.    The Board had ample basis for finding that the Angros patent is not analogous art.**

Gemtron does not dispute that the grounds for invalidation that the Board accepted for review all required that the Angros patent be accepted as analogous prior art. *See, e.g.*, Appellant's Br. at 27.  Gemtron depended entirely on Angros for the hydrophobic "spill containment pattern" required by all the challenged claims. *See* A122; A29 (Board finding that, without Angros, "the combination of Picken and Baumann lacks a suggestion to create a hydrophobic barrier wherein the majority of the top surface of shelving assembly is not hydrophobic").

Only analogous art may be considered when analyzing obviousness. *See In re Bigio*, 381 F.3d at 1325.  Prior art is non-analogous if it is neither from the same field of endeavor as the claimed invention nor "reasonably pertinent" to the problem faced by the inventor. *See In re Klein*, 647 F.3d 1343, 1348 (Fed. Cir. 2011).  Both parties acknowledged that Angros's patent was not from the same field of endeavor as the '561 patent for refrigerator shelves. *See* A19 ("The parties do not dispute that Angros' disclosure regarding microscope slides is not in the same 'field of endeavor' as the '561 patent, which relates to refrigerator shelves."). Therefore, to successfully assert the Angros patent, Gemtron had to show that it was "reasonably pertinent" to the problem faced by the inventor.

To be considered reasonably pertinent, prior art must "logically commend" itself to an inventor's attention in considering the problem addressed by the

challenged patent. *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1321 (Fed. Cir. 2011). Importantly, the pertinence of prior art as a source of solution to the inventor's problem ***cannot*** be considered using hindsight, but must instead be recognizable with the foresight of a person of ordinary skill. *In re Oetiker*, 977 F.2d 1443, 1447 (Fed. Cir. 1992). And "[w]hether a particular technology is analogous art is a question of fact." *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1324 (Fed. Cir. 2012) (holding that "this factual dispute was for the jury to resolve").

Based on the record before it, the Board was "persuaded that one of ordinary skill in the art of the '561 patent would ***not*** have considered the subject matter of Angros, which deals with microscope slides, to be reasonably pertinent to the problem being addressed by the applicants of the '561 patent in designing refrigerator shelves." A23 (emphasis added). The Board thus concluded that "Angros cannot be used in combination with other references (including Baumann) to support a showing of obviousness." *Id*. at 27. Substantial evidence supports the Board's factual finding that the Angros patent is not analogous art.

## A. SSW provided abundant evidence that the Angros patent is not analogous art.

Indeed, it is an understatement to say that the Board's factual finding about the Angros patent was supported by substantial evidence; it was supported by ***all*** the evidence, including admissions by Gemtron's witness as well as extensive

testimony from SSW's well-qualified and well-credentialed expert witness, Richard Bruce Mills. *See, e.g.*, A1718-19, A1721, A1744-45, A1731-37. Mr. Mills explained in detail why a microscope slide would not have "logically commended" itself to the attention of one or ordinary skill in the art attempting to design refrigerator shelf that contained spills while maximizing available shelf space. He explained, "In my experience, engineers and designers of spill resistant shelves would have very little familiarity with the details of devices found in a typical laboratory setting, such as microscopes or microscope slides." A1731-32.

Mr. Mills testified without contradiction that, from the point of view of a person of skill in the art, "[t]here are several key differences between the Angros microscope slides and the spill proof shelf of the '561 patent . . . [that] make clear the Angros reference is not 'reasonably pertinent' to the problem of making an improved spill-resistant shelf . . . ." A1733. For example, "Angros is concerned with holding a small sample that is carefully and intentionally placed on the slide. According to Angros, such liquid samples are purposely 'placed upon' the slide at a specific location—i.e., the holding area of the slide. Such samples are not the result of a spill." A1736. In contrast, "[t]he '561 patent is concerned with holding spills, which occur in unpredictable locations on the shelf (including at or near the edge of the shelf) and in unpredictable amounts." *Id*. From the point of view of a

person of skill in the art, "the hydrophobic border described by Angros is ***not*** being used to contain spills or to otherwise provide a spill resistant barrier, which is the problem being addressed by the '561 patent. Spills can be of an uncontrolled quantity, occur with uncontrolled amounts of force, and originate from any location across the shelf. The border in Angros is instead used to hold a very small specimen in one location so as to allow microscopic examination." A1734. "[A] person of ordinary skill in the art would not consider a small microscope slide or analytic or diagnostic plate to be equivalent or even analogous to a 'shelf' or 'shelf panel' as these terms are used and defined in the '561 patent." A1732.

Mr. Mills further testified that, from the perspective of a person of skill in the art, "Angros actually teaches away from spill containment. For example, some of the figures from Angros [are] exactly the opposite of the design you would choose if your goal is containing spills. . . . [S]pill containment does not appear to have been a concern of the Angros inventors." Instead, "Angros seems to emphasize avoiding mixing or contamination of multiple samples on the same slide. A1734-36. In addition, "lab slides are small, inexpensive, fragile, disposable, and designed for no more than a handful of uses before being discarded. They need not be easily cleaned. They need not be durable. But an appliance shelf must have features and durability sufficient to survive the abrasion,

cleaning cycles, use and misuse that it will endure over its multi-year lifetime." A1736-37.

Gemtron submitted no expert testimony or other evidence to rebut this testimony by Mr. Mills. In fact, the testimony of Gemtron's own witness, Mr. Schechter, provided further support for the Board's finding that the Angros patent was not analogous art. The Board found that "Mr. Schechter . . . corroborates the testimony of Mr. Mills." A22-23.

> Mr. Schechter testified that during the course of his work for Petitioner, he familiarized himself with the state of the art by reviewing "patents focused primarily on the consumer appliance industry" and occasionally reviewed technical publications, technical data sheets, and manuals for production equipment. Mr. Schechter, however, testified that microscope slides are not something with which he works in his work for Petitioner, and could not recall any instance where he reviewed patents or publications (other than Angros) related to microscopes. In fact, Mr. Schechter testified he did not find Angros during a prior art search; rather, it was given to him by legal counsel.

*Id.* (citations omitted). The Board "credit[ed] the testimony of both Mr. Schechter and Mr. Mills." *Id.*

This detailed testimony abundantly satisfies the "substantial evidence" standard applicable to the Board's finding that the Angros patent is not analogous art to the claimed invention. Indeed, this Court has found that standard to be satisfied based on far finer distinctions than those detailed above. For example, in *Wang Laboratories, Inc. v. Toshiba Corporation*, this Court held that substantial

30

evidence supported the conclusion that a difference in size provided substantial

evidence that prior art related to memory circuits for larger industrial controllers

was not reasonably pertinent to a memory circuit intended for smaller, compact

personal computers:

> Wang's SIMMs [the patented invention] were designed to provide compact computer memory with minimum size, low cost, easy repairability, and easy expandability. In contrast, the Allen–Bradley [prior art] patent relates to a memory circuit for a larger, more costly industrial controller. . . .  According to Dr. Frey, size was not a consideration in the Allen–Bradley work. Thus, there is substantial evidence in the record to support a finding that the Allen–Bradley prior art is not reasonably pertinent and is not analogous.

993 F.2d 858, 865 (Fed. Cir. 1993).

### B.    Gemtron provided no evidence that persons of ordinary skill would have considered the Angros patent analogous.

As the party asserting that the Angros patent was analogous art, Gemtron

bore the burden of providing admissible evidence that a person of skill in the art

would have found the Angros with its microscope slides to be "reasonably

pertinent" to SSW's patented spill-proof appliance shelves.  *See* 35 U.S.C. § 316(e)

("In an inter partes review instituted under this chapter, the petitioner shall have

the burden of proving a proposition of unpatentability by a preponderance of the

evidence."); *In re Klein*, 647 F.3d 1343, 1347 (Fed. Cir. 2011)(PTO determination

of whether a reference is "analogous art" is an issue of fact reviewed for

substantial evidence).  This Court has often cautioned that "arguments of counsel

cannot take the place of evidence lacking in the record." *Estee Lauder Inc. v. L'Oréal, S.A.*, 129 F.3d 588, 595 (Fed. Cir. 1997).  Yet Gemtron provided not a shred of evidence on this critical factual issue, relying solely on the unsupported arguments of its counsel.  As the Board noted, "[Gemtron] does not cite any testimony (from Mr. Schechter or otherwise) stating that Angros is analogous art to the '561 patent or explaining why that would be the case."  A23.

Lacking evidence, Gemtron substitutes attorney argument that "the '561 Patent is nothing more than a scaling up of the technology disclosed in Angros." Appellant's Br. at 57.  Gemtron claims that this was the "thrust" of the testimony of Mr. Mills (*id.*), but he never said that and, indeed, said the opposite.  *See, e.g.*, A1738 ("[A] person of ordinary skill in the art … would not expected that a border for holding small specimens precisely deposited in a laboratory setting could be successfully 'scaled up.'"); A1377 ("Angros is—if you were to just scale it up and from what we have learned, it would not retain as much liquid for a given area . . . ."). Further, Mr. Mills was testifying based on his own present knowledge as an engineer who has observed and tested patented products, not from the perspective of a person of ordinary skill, without hindsight, at the time of the invention.  *See* A1377.  In any event, the Board had his deposition before it and was free to decide

32

how much or how little weight to give that testimony as long as its ultimate findings were supported by substantial evidence. *See supra* part I.

Under this Court's precedent, Gemtron's failure to provide any testimony or evidence from one of ordinary skill in the art dooms its arguments about analogous art. *See K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1375 (Fed. Cir. 2012). In *K-TEC*, the Court held that a patent challenger "failed to raise a genuine issue of material fact" whether prior art was "reasonably pertinent" and therefore analogous art, because the challenger's expert report was "'silent on the question of why [the inventor] would have looked to non-blending containers to discover the[ ] commonplace designs' depicted in Hobbs and Grimes." *Id.* Because Vita-Mix's expert did not "explain any rational underpinning for [the inventor] to have consulted non-blending containers or food mixers in order to solve the problems he encountered in designing a new blending container," the Court affirmed summary judgment of non-obviousness. *Id.* Similarly, without expert testimony explaining why the Angros patent was reasonably pertinent, Gemtron has not even properly raised the issue—let alone overcome the contrary evidence cited by the Board.

## C.   The Board correctly understood the problem addressed by the '561 patent.

Trying to avoid the substantial and indeed uncontroverted evidence that Angros is not analogous, Gemtron argues that the Board "[m]isconstrued [t]he [p]roblem [a]ddressed [b]y [t]he '561 [p]atent." Appellant's Br. at 45. In reality,

33

though, the Board's factual finding on that issue was supported by substantial evidence. This included:

- The expert testimony of Richard Mills. *See, e.g.*, A1725-26 ("usable shelf space was an important issue for refrigerator design" and prior-art encapsulated shelves "reduced the amount of usable shelf space for refrigerator shelves").

- The teachings of the '561 patent itself. *See, e.g.*, A857 ("[T]he shelf assembly 1020 depicted in FIGS. 3 and 4 maximizes the available useful shelf space since it does not include a plastic rim, a frame, or any other physical barrier or dam extending above the top surface 1023 of the shelf panel 1024 for preventing liquids from spilling off of the shelf panel 1024.")

- Publications referring to the problem of usable shelf space. *See* A1599; A1602; A1604; A1606; A1610; A1633.

On the basis of this and other evidence, the Board found that the problem faced by the '561 patent inventors was "not simply how to contain liquids in a predetermined area—it was how to maximize the available storage space . . . while containing accidental and unpredictable spills." A21. Far from refuting this well-supported finding, Gemtron yet again offers no evidence at all to the contrary. Here again, Gemtron merely offers attorney argument, asking this Court to

supplant the evidence in the record with the mere *ipse dixit* of Gemtron's counsel. *See* Appellant's Br. at 45-47.

**D.    The Board correctly construed "spill."**

Gemtron misguidedly focuses its argument on the Board's construction of the term "spill" to mean "the accidental or unintentional release of liquid." But the Board's construction was correct. Further, a broader construction would not have altered the Board's dispositive findings about the Angros patent and non-obviousness. *See supra* parts II A-C; *infra* part III.

The Board's construction of "spill" is abundantly reasonable in view of the teachings and context of the '561 patent. Indeed, a broader construction would have been unreasonable, since the patent was manifestly addressing the problem of unintentional releases of liquid. There is absolutely nothing in the patent or in the record to support that intentional pouring of liquid onto refrigerator shelves (or the like) is a problem that the inventors or anyone of skill in the art wanted or needed to address.

Notably, the '561 patent consistently uses the term "*spill*" to refer to non-intentional and accidental occurrences and the term "*pour*" to refer to intentional acts. For example, the patent "illustrate[s] the concepts of liquid *spillage*" with a figure showing a soda can that has been tipped on its side and "has *spilled* liquid" as a result. A856 (emphasis added). In contrast, the patent uses the term "pour"

when the inventors deliberately "*poured*" water onto the hydrophobic shelf to test the amount of fluid it could retain. *Id*. (emphasis added).

Gemtron absurdly points to passages that describe such testing as supposedly proving that "the claimed technology" addressed intentional releases of fluid. Appellant's Br. at 39-40. Obviously, the inventors had to intentionally release fluid to test or demonstrate their invention. They could not stand around indefinitely waiting for an accident to see how their design would perform. But this does not mean that the purpose of the invention was to contain intentional releases of fluid. Similarly, crash testing of cars does not mean that seat belts, air bags, and other safety features are intended to address people intentionally crashing their cars.

Gemtron misapplies *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350-51 (Fed. Cir. 2005), to argue that the Board's reference to unintended releases of fluid would make the claims indefinite. *See* Appellant's Br. at 42-45. *Datamize* stands for no such proposition. The indefiniteness in *Datamize* resulted from the claim's use of the nebulous term "aesthetically pleasing," when the patent "[did] not suggest or provide any meaningful definition for [that] phrase" and "fail[ed] to provide any direction regarding the relevant question of how to determine whether that person succeeded in creating an 'aesthetically pleasing' look and feel for interface screens." *Datamize*, 417 F.3d at 1349-50. In contrast,

there is no comparable difficulty in determining whether fluid is unintentionally "spilled" or intentionally "poured" on a refrigerator shelf. Further, unlike the Datamize patent, which required an "aesthetically pleasing" look and feel, the '561 patent claims do not require a spill. What they require is a "spill containment pattern," which needs to be reasonably suitable for containing spills if they occur. That means that the pattern cannot be useful only for containing "miniscule amounts of liquids that are *intentionally* placed on a microscope slide," as in the Angros patent. A21. As one of skill in the art would readily understand, "[s]pills can be of an uncontrolled quantity, occur with uncontrolled amounts of force, and originate from any location across the shelf," whereas "[t]he border in Angros is instead used to hold a very small specimen in one location so as to allow microscopic examination." A1734.

In addition to failing to refute the Board's construction, Gemtron fails to establish how any supposed flaw in the construction would have changed the Board's finding that the Angros patent is not analogous art. Gemtron did not offer *any* testimony on the broader issue of analogous art, much less testimony explaining why one of ordinary skill in the art would have made the broad leap from refrigerator shelves to microscope slides, regardless of how one construes the term "spill." As the Board noted, "the problem faced by the inventors of the '561 patent was not simply how to contain liquids in a predetermined area—it was how

to maximize the available storage space on shelves while containing accidental and unpredictable spills." A20-21. Gemtron does not explain how or why including intentional releases of fluid in the definition of "spill" would have changed that problem or would have made Angros analogous. And Gemtron certainly does not provide any evidence on that issue. This double failure renders Gemtron's claim construction arguments irrelevant. *See K-TEC*, 696 F.3d at 1375.

## III. Gemtron failed to prove obviousness in other respects as well.

The Board's finding that the Angros patent is not analogous art was fatal to Gemtron's attempt to prove obviousness. *See, e.g*., A29. But while sufficient, this finding was not necessary to justify the Board's decision. Gemtron's obviousness contentions suffered from other fatal deficiencies as well.

### A. The Baumann patent is not analogous art.

In addition to depending on the Angros patent, Gemtron depended on the Baumann patent for the frit required by claim 13. *See* A155-60. But like the Angros patent, the Baumann patent is not analogous art. *See, e.g*., A1741-43.

The Baumann patent describes using "glass, ceramic, and metal substrates" to provide a "self-cleaning surface" suitable "for glazing vehicles and trains and for glass bricks" as well as for "building material such as roof tiles, clinker and floor tiles." A1078; A1082-83. For example, Baumann claims "[a] substrate with a self-cleaning surface according to claim 1 for use in a construction and/or

38

decorative application, self-cleaning elements in the building industry, or plant construction."  A1085.

The unrebutted testimony of Mr. Mills shows that a person of ordinary skill in the field of refrigerator and kitchen appliance shelf assemblies and the like would find the self-cleaning substrates for vehicles, trains, and building materials in the Baumann patent to be in a completely different and distinct field of endeavor from the '561 patent.  *See* A1741-43.  Besides coming from a different field of endeavor, the Baumann patent is also directed to a much different problem and purpose than those addressed by the '561 patent.  In fact, the purpose of the Baumann patent is  "***directly opposite*** to the intended objective of the '561 Patent." A1742.  The whole point of the Baumann patent is to provide a "self-cleaning surface" that is "virtually unwettable by water and preferably by other liquids, so rapid drop formation becomes possible and dirt particles deposited are washed away in a simple manner with the drops running down."  A1084; A1081; *see* A1741-1743.  Baumann's "[p]referred surfaces have 'super-hydrophobic properties', causing water drops to run down them almost without friction." A1084.

In contrast to Baumann's teaching and objective to eliminate water entirely from the treated surface, the objective of the '561 patent "is to ***contain*** spills" by retaining them on the surface.  A1742.  Nothing in the Baumann patent discloses or

suggests applying the coating to less than the entire surface so as to contain spills. To do so would be contrary to Baumann's teaching and objective of eliminating water entirely from the treated surface.  A1741-43.

Being neither from the same field of endeavor nor reasonably pertinent to the problem addressed by the '561 patent, the Baumann patent is not analogous art and cannot support obviousness of the challenged claims.  *See In re Bigio*, 381 F.3d at 1325.

### B. The Board correctly determined that—regardless of whether Angros were considered analogous art—Gemtron still failed to establish obviousness.

Even if Gemtron could have established that Angros and Baumann were both analogous art, substantial evidence would still support the Board's determination that claims 1, 13, and 25 were not obvious.  For example, according to the Board, "***even if Angros did qualify as prior art***, Petitioner has not shown that the combination of Angros with Picken would have rendered claims 1 and 25 obvious."  A23 (emphasis added).  The Board found that Gemtron relied on conclusory testimony of Mr. Schechter, which the Board rejected as "impermissible hindsight."  A25.

> Mr. Schechter . . . does not explain sufficiently why a person of ordinary skill in the art would look to the field of microscope slides to find a hydrophobic coating to act as a less obtrusive spill containment border in place of the plastic rim in Picken.  Mr. Schechter's testimony is impermissible hindsight; he opined that all of the elements of the claims disparately existed in the prior art, but ***fails to***

> ***provide sufficient reason for why one of ordinary skill in the art at
> the time of filing would have combined these references****.*

*Id*. (emphasis added).

Gemtron's reliance on merely conclusory testimony was fatal to its case
even apart from its failure to establish that Angros was analogous art. As the
Board noted, a determination as to obviousness required it to "cast our minds back
to the time the invention was made (often, as here, many years), to occupy the
mind of one skilled in the art who is presented only with the references, and who is
normally guided by the then–accepted wisdom in the art." A25 (quoting *W.L.
Gore & Assoc., Inc. v. Garlock, Inc*., 721 F.2d 1540, 1553 (Fed. Cir. 1983)).
Gemtron and its expert failed to undertake this required analysis. The Board found
that, instead:

> Petitioner attempts to imbue one of ordinary skill in the art with
> knowledge of the claimed invention, when no prior art reference or
> references of record convey or suggest that knowledge. Rather,
> Petitioner's argument that Angros is analogous art and that Angros is
> combinable with Pickens appears to be ***premised on Petitioner's
> knowledge of the '561 patent disclosure***.

A26 (emphasis added). In other words, Gemtron's entire argument was based on
hindsight.

Even if Gemtron had presented any non-conclusory and non-hindsight
testimony as to obviousness, the Board would still have had substantial evidence to
support its finding that "no prior art reference or references of record convey or

41

suggest that knowledge [of the invention]." A26. Indeed, Gemtron strains

credulity by positing that one of ordinary skill in the art would have somehow been

motivated to combine the ***microscope slide*** of Angros with the ***coating for***

***building materials*** of Baumann, so as to recreate a ***refrigerator shelf*** as claimed in

the '561 patent. Mr. Mills provided detailed and well-supported explanations why

the asserted combinations were ***not*** obvious. As he explains, "a person of ordinary

skill in the art … would not have expected that a border for holding small

specimens precisely deposited in a laboratory setting could be successfully 'scaled

up.'" A1738. Nor would a person of ordinary skill in the art have expected

Angros's hydrophobic border to be sufficiently durable for use in refrigerators, etc.

A1736.

In addition, the Angros patent lacks the hydrophobic "spill containment

pattern" required by all the claims. The Board correctly construed "spill" as used

in the '561 Patent to mean "an accidental or unintentional release of liquid." A6-8;

*see supra* part C. But the hydrophobic border in the Angros patent is not being

used to contain any such spills or to otherwise provide a spill resistant barrier.

Instead, Angros's border is being used to hold a very small, preselected specimen,

which is intentionally placed in a small, defined location under carefully controlled

conditions, so as to allow microscopic examination of the specimen. *See* A1736;

A1057. In the words of the Board, "the hydrophobic spill-containment perimeter

on refrigerator shelves of the '561 patent is designed to contain accidentally spilled liquid and thereby maximize available storage space, whereas the microscope slides of Angros are designed to contain miniscule amounts of intentionally placed liquid."  A22.

The Board was also entitled to discount Mr. Schechter's testimony because he was not one of ordinary skill in the art (*see infra* part IV), whereas obviousness can be determined only from the perspective of a person with such ordinary skill. *See Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1360-61 (Fed. Cir. 2006) ("General experience in a related field may not suffice."); A18.

Further, the prior art teaches away from the asserted combinations in multiple respects.  Prior art that teaches away from the claimed invention supports a finding of non-obviousness.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007) ("[W]hen the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious.").  And disparaging the efficiency or performance of the claimed invention is sufficient to support a finding of teaching away.  For example, in *Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.*, 750 F.2d 1569, 1575-76 (Fed. Cir. 1984), the Federal Circuit found that three references taught away from a claimed blasting agent that used occluded air in emulsion as primer when two of the references simply did not mention air or gas as an ingredient in their explosives

and one actually taught that detonation performance could be improved by using emulsifiers to eliminate frothing (air) from explosives. In *Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361, 1370-71, 1379-80 (Fed. Cir. 2000), the Federal Circuit similarly held that prior art taught away from a claimed deoxygenation process by saying that the process which formed the foundation of the claimed invention was inefficient and expensive and created carbon contaminants. And in *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1556 (Fed. Cir. 1996), the Federal Circuit held that claims directed to reducing the hydraulic diameter in an automotive condenser were not obvious because the "reduction of hydraulic diameter had previously been associated with an undesirable increase in refrigerant-side pressure drop."

Even if the Angros patent were analogous art, a person of ordinary skill in the art would not have added a ceramic frit to the border of Angros, as is required by claim 13 of the '561 patent. As Mr. Mills testified, the Angros patent teaches away from such an addition. *See* A1738-39. Angros teaches those of skill in the art to avoid any pretreatment or intervening layer between the liquid repellant coating and the slide. *See, e.g.*, A1058; *see also* A1739 ("[T]his passage from Angros would have discouraged a person having ordinary skill in the art from adding any intervening layer (including a ceramic frit) between the hydrophobic

44

border and the glass substrate, because this language clearly advocates avoidance of intervening layers.").

Angros teaches away in another way as well. Even if the Angros patent were analogous art, "a person having ordinary skill in the art would not have added a ceramic frit to the border of Angros . . . because a ceramic frit would make the border non-transparent." A1739-40. Angros emphasizes the importance of "maintaining transparency" and criticizes loss of transparency. A1057; *see* A1057. Adding the frit layer of Baumann would have destroyed this key characteristic as taught by Angros. *See* A1740.

The Board was entitled to accept Mr. Mills' well-qualified and thoroughly supported testimony that the inventions recited in claims 1, 13, and 25 of the '561 patent would not have been obvious to one of ordinary skill in the art from the disclosures of Angros, Picken, and Baumann or any combination of them. *See* A26; A1731-43. All the more so since Gemtron relies solely on impermissible hindsight and fails to provide "sufficient reason for why one of ordinary skill in the art at the time of filing would have combined these references." A25-26. Because substantial evidence supports the Board's determination that Gemtron "has not shown that Angros qualifies as prior art under 35 U.S.C. § 103 or that, even if it did, it renders the claims unpatentable," the Court should affirm that determination. *Id*.

### C.    Multiple objective indicia support non-obviousness.

Objective indicia of non-obviousness are important because they "can establish that 'an invention appearing to have been obvious in light of the prior art was not." *Rambus, Inc. v. Rea*, 731 F.3d 1248, 1256 (Fed. Cir. 2013) (quoting *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1984)). "In some cases, that evidence is 'the most probative and cogent evidence in the record.'" *Rambus,* 731 F.3d at 1256 (quoting *Stratoflex,* 713 F.2d at 1538). "It helps 'turn back the clock and place the claims in the context that led to their invention.'" *Rambus,* 731 F.3d at 1256 (quoting *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1378 (Fed. Cir. 2012).

SSW submitted to the Board powerful and unrebutted evidence of multiple objective indicia of non-obviousness:

*Long-felt and unmet need:* SSW submitted declarations and documents showing that there was a persistent need for an alternative to the prior art "encapsulated" shelves that were "essentially the 'only game in town' when it came to spill-resistant shelves suitable for modern refrigerators," that this need was not satisfied by anyone else before the patented invention, and that the invention satisfied the need. *See, e.g.*, A1728; A1707-08; A1689-90; A1747-50.

*Skepticism and surprising results:* SSW submitted evidence that its invention was met with skepticism and achieved surprising results. This included

46

testimony that, when SSW approached Whirlpool to present the invention, Whirlpool's experienced refrigerator engineers thought that it would be a waste of time. A1336. They were surprised to see the invention work and to learn that it achieved spill containment comparable to an encapsulated shelf without using a raised barrier. *Id*.

*Failure of others and copying:* SSW submitted evidence showing that Gemtron tried and failed to design its own hydrophobic shelves, after which Gemtron resorted to simply copying SSW's patented design. *See* A1751. Gemtron obtained a Whirlpool specification that detailed SSW's patented features, and Gemtron used that specification to produce a functioning hydrophobic spill-containing shelf that was virtually identical to SSW's design. *See* A1715-16; *see also* A1713-15; A1792; A1793-95.

*Commercial success:* SSW provided evidence that SSW's patented shelves achieved commercial success as a result of the patented features. *See* A1728-30; A1693-94; A1697-98; A1700-01; A1796-1800; A1809-11.

*Acclaim:* SSW also submitted evidence showing that SSW's patented hydrophobic shelves have garnered public, industry, and customer praise from, for example, the *Wall Street Journal*, Whirlpool, and Viking, as well as online consumer reviews. *See, e.g.*, A1492-1644; A1753-61; A1834-36.

Given its determination that Gemtron had not sustained its initial burden of proving obviousness, the Board concluded that it "need not address Patent Owner's evidence regarding secondary considerations of non-obviousness." A30. But if the Court should disagree with the Board's conclusion regarding obviousness, then SSW should be provided an opportunity to have the Board consider this evidence on remand. *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1079 (Fed. Cir. 2012) ("[O]bjective considerations [of non-obviousness] might serve to resist the temptation to read into the prior art the teachings of the invention in issue … [and] fact finders must withhold judgment on an obviousness challenge until [they] consider[ ] all relevant evidence, including that relating to the objective considerations."

## IV.    The Board's findings as to Christopher Schechter provide no basis for reversal.

Gemtron complains about the Board's factual finding that Gemtron's proffered expert witness—its employee Christopher Schechter—was not of ordinary skill in the art. *See* Appellant's Br. at 59-61. This argument fails for multiple reasons. First, the Board was correct—and its finding was certainly supported by substantial evidence. Second, even if there had been any error, it would have been harmless to Gemtron, because, regardless of his expertise, Schechter never provided testimony sufficient to satisfy Gemtron's burden of proof.

48

### A.    Schechter was not of ordinary skill in the art.

The Board made a well-supported factual finding that a person of ordinary skill in the relevant art at the time of the claimed invention "would have had a degree in mechanical engineering or a similar discipline, and at least three years of work experience with refrigerator shelf assemblies." A17.  This finding was supported by the Board's "review of the '561 patent, the types of problems and solutions described in the '561 patent and cited prior art, and the testimony of the parties' declarants." *Id.*  For example, Richard Bruce Mills testified that a person of ordinary skill should have at least an associate's or bachelor's degree and three years of experience working with shelf assemblies, as well as familiarity with "encapsulated spill containing refrigerator shelves." A1720.  And Mr. Schechter himself testified that a person of ordinary skill in the art "would have at least a bachelor's degree in mechanical engineering and at least four years of experience designing and manufacturing shelf assemblies or equivalent education and training." A1162.

Applying its definition of ordinary skill to Mr. Schechter, the Board found that he simply did not qualify as a person ordinary skill. *See* A17-18.  The Board noted that Mr. Schechter "had less than two years of experience [designing and manufacturing shelves] when he signed his declaration on June 14, 2013" and he was also "not a person of ordinary skill in the art at the time of the invention of the

49

'561 patent (i.e., June 27, 2008)." *Id*. The Board further noted that Mr. Schechter

admitted at his deposition that he did not qualify as one of ordinary skill in the art

under his own definition. *Id*. Given Mr. Schechter's failure to meet the Board's

(or even his own) definition of ordinary skill—whether at the time of the invention

or even when signed his declaration—the Board appropriately gave his testimony

less weight. *Id*.; *see, e.g*., *Sundance, Inc. v. DeMonte Fabricating Ltd*., 550 F.3d

1356, 1364 (Fed. Cir. 2008) (witness who was not qualified as a person of ordinary

skill in the pertinent art could not testify as an expert on obviousness.); *Extreme*

*Networks, Inc. v. Enterasys Networks, Inc.,* 395 Fed. Appx. 709, 715 (Fed. Cir.

2010) (excluding testimony from expert who "would not qualify as a person of

ordinary skill in the relevant art").

None of Gemtron's criticisms of the Board's findings about Schechter are

well taken.

- Gemtron argues that the Board "miscalculated Mr. Schechter's years
  of experience designing shelf assemblies" because, according to
  Gemtron, he began designing and manufacturing shelf assemblies in
  December 2011, a year earlier than stated in his curriculum vitae.
  Appellant's Br. at 60. Gemtron says that Schechter should therefore
  be credited with an "additional year of experience unaccounted for by
  the Board." *Id*. But even after adding such an year, Schechter would

still have had less than "at least three years of work experience with refrigerator shelf assemblies" and would still not qualify as one of ordinary skill under the Board's definition.  A17-18.  Gemtron does not challenge the Board's requirement for three years of experience.  *See* Appellant's Br. at 59-61.

- Citing a district court decision, Gemtron asserts that an expert's knowledge may be acquired after the time of the invention. Appellant's Br. at 60 (citing *Disney Enters., Inc. v. Kappos*, 923 F. Supp. 2d 788, 799 (E.D. Va. 2013).  But even crediting Mr. Schechter with the extra year asserted by Gemtron, he still did not have the requisite experience when he provided the declaration on which Gemtron seeks to rely.  *See* A1184.  Further, Gemtron provides no authority that the Board did not have discretion to consider whether Schechter was of ordinary skill at the time of the invention—which would affect his ability to accurately assess the state of mind of a person of ordinary skill at that time and to assess obviousness as of that time without hindsight.

- Gemtron argues that the Board's finding about ordinary skill focused excessively on refrigerator shelves.  *See* Appellant's Br. at 60.  But Gemtron does not cite any expert testimony supporting this

contention, and Gemtron does not explain how the Board's definition should have been broadened. *Id.* And, importantly, Gemtron does not explain how any such broader definition would have made any difference to the Board's final decision. There is no evidence that Mr. Schechter would have qualified as one of ordinary skill in the art under a definition that broadened the field of the required experience. *See id*.; A1184 (When he signed his declaration, Schechter had only about 2 ½ years of experience "designing and manufacturing shelf assemblies.").

- Finally, Gemtron argues that "Mr. Schechter never testified that he does not qualify as one of ordinary skill in the art." Appellant's Br. at 61. But in fact, Schechter testified that he had only "[a]pproximately 2 and a half" years of experience designing and manufacturing shelf assemblies when he signed his declaration. A1184.

Gemtron has tried to treat Schechter's Master's degree as equivalent to an additional 2 years of experience; but the Board was not obligated to accept that argument. Nothing in either the Board's definition or even Schechter's own definition of ordinary skill supports such a substitution, and Gemtron points to no evidence equating a Master's degree to two years of shelf design experience. *See* A16-18; Appellant's Br. at 61. Substantial evidence supports both the Board's

finding about the level of ordinary skill and its finding that Schechter did not satisfy that definition.

### B.    In any event, Schechter did not adequately support Gemtron's invalidity contentions.

While the Board was correct about Mr. Schechter lack of ordinary skill, the result would have been the same regardless of that finding.  Beyond being unqualified, Schechter's testimony was inadequate to meet Gemtron's burden of proof and persuade the Board of the facts necessary to support a conclusion of obviousness.

Indeed—as the Board recognized—Schechter's testimony actually corroborated Mr. Mills with regard to the Angros patent not being analogous art. *See* A22-23.  Beyond that, the Board found that "Mr. Schechter's testimony is impermissible hindsight . . . ."   A25.  His testimony was almost entirely conclusory, and he "fails to provide sufficient reason for why one of ordinary skill in the art at the time of filing would have combined [the asserted] references." *Id*. Even if he had been credited with ordinary skill, the conclusory testimony of Gemtron's employee would not have been enough to establish obviousness, especially in the face of the well-qualified contrary opinions of SSW's expert and his detailed—largely unrebutted—explanations of why SSW's invention was not obvious.

## VI.    The Board's non-institution decisions were appropriate and are not appealable.

Gemtron asks this Court to compel the Board to conduct an *inter partes* review of two additional grounds raised in Gemtron's petition: the patentability of the challenged claims over the Sikka application and whether those claims were anticipated by the Angros reference.  But this Court does not have jurisdiction to decide what issues the Board should review, since Congress entrusted that decision to the sole discretion of the Director of the Patent and Trademark Office.  Further, the Board's decision's were well-founded and not an "abuse of discretion" as claimed by Gemtron.  Appellant's Br. at 33.

### A.    The Board's decisions about institution of *inter partes* reviews are not subject to appeal.

Under 35 U.S.C. section 314, the Patent and Trademark Office's decisions not to institute a review of patentability based on the Sikka application or based on alleged anticipation by the Angros patent were both "final and nonappealable."  As a fundamental part of the statutory scheme for *inter partes* review, Congress decided to entrust the gatekeeping role to the discretion of the Director.  As a result, the statute is framed to avoid placing ***any*** limits on the Director's discretion to deny *inter partes* review.  The section on "Institution of Inter Partes Review" limits only the Director's discretion to authorize *inter partes* reviews—not the discretion to deny them.  *See* 35 U.S.C. § 314(a) ("The Director may not authorize

an inter partes review to be instituted unless . . . there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."). This distinctive negative wording reflects a conscious decision by Congress to expand the Director's discretion beyond what was permitted in previous review procedures. Both the statute on *ex parte* reexaminations and the now-superseded statute on *inter partes* reexaminations mandated that the Director "will" or "shall" determine whether the statutory standard is met and, if so, conduct a reexamination. *See* 35 U.S.C. §§ 303-04 (*ex parte* reexaminations); 35 U.S.C. §§ 312(a), 313 (May 2011) (*inter partes* reexaminations). The contrasting language used in the *inter partes* review statute is no accident.

In crafting the *inter partes* review statute, Congress undertook to create a new process for the Office to provide both a deeper and a faster review than those afforded by the reexamination statutes. The America Invents Acts "convert[ed] inter partes reexamination from an examinational to an adjudicative proceeding" in order to "provid[e] quick and cost effective alternatives to litigation." H.R. Rep. No. 112-98, at 46-48 (2011). Congress considered the speed of the new process so important that it imposed a one-year deadline for completing the new adjudicative process. *See id.*; 35 U.S.C. § 316(a)(11) ("the final determination in an inter partes review [must] be issued not later than 1 year after the date on which the Director notices the institution of a review under this chapter, except that the Director may,

for good cause shown, extend the 1-year period by not more than 6 months . . .").

But Congress recognized that completion of a full adjudicatory process in such a

short time would impose heavy and potentially insuperable burdens on the Patent

and Trademark Office. The Office had expressed concerns that proposed post-

issuance review proceedings might overwhelm its resources. *See, e.g., Patent*

*Reform: The Future of American Innovation: Hearing Before the S. Comm. on the*

*Judiciary,* 110th Cong. 11-12 (2007) (statement of USPTO Director Jon Dudas);

*id.* at 243 (Department of Commerce letter expressing "concerns about the

USPTO's ability to effectively handle the potential workload" of the post-grant

review proposed in S. 1145, 110th Cong (2007)); S. Rep. No. 111-18, at 56 (2009)

("Shortly after [H.R. 1908, 110th Cong.] passed the House, senior career staff at

the [USPTO] made clear to some of us that the post-grant review system proposed

by that bill was unadministrable, would strain the [USPTO]'s resources, and would

create an enormous backlog at the Office."); 157 Cong. Rec. S1040 (daily ed. Mar.

1, 2011) (statement of Sen. Kyl). Congress took these concerns into account, and

the resulting statute "reflects a legislative judgment that it is better that the Office

turn away some petitions that otherwise satisfy the threshold for instituting an inter

partes or post-grant review than it is to allow the USPTO to develop a backlog of

instituted reviews that precludes [it] from timely completing all proceedings." 157

Cong. Rec. S1377 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl).

Gemtron's attempt to second-guess the Office's decisions about what issues to review threatens this statutory scheme and would deprive the Office of the ability to manage the burdens of *inter partes* review as Congress intended. Tellingly, Gemtron never identifies a viable statutory basis on which this Court could review the Office's "final and nonappealable" decisions. That is simply because there is no such basis. Congress did not intend for this or any other court to review the Office's institution decisions.

Stretching to find the missing basis for such unauthorized judicial review, Gemtron argues that "[t]he substance of the institution decision . . . becomes part of the whole proceeding . . . and therefore is reviewable . . . upon appeal of the Final Written Decision under § 319." Appellant Br. at 64-65. But Gemtron's argument is directly contrary to this Court's holding in *In re Cuozzo Speed Technologies, LLC*, in which the Court held that "§ 314(d) prohibits review of the decision to institute an IPR even after a final decision." *Cuozzo*, 778 F.3d at 1277. If Gemtron's reasoning were adopted, it would likewise apply to the situation in *Cuozzo,* meaning that *Cuozzo* was decided in error.

As the Court in *Cuozzo* explained, both the plain language of section 314(d) and its context within the IPR statute compel the conclusion that the Court cannot review a decision to institute an IPR even after a final decision. Applying the section's plain meaning, the Court explained, "A declaration that the decision to

institute is 'final' cannot reasonably be interpreted as postponing review until after issuance of a final decision on patentability." *Id.* at 1275. The Court also noted that section 314(d) would be redundant if it were interpreted to permit review after issuance of a final decision:

> [G]iven that § 319 and § 141(c) already limit appeals to appeals from final decisions, § 314(d) would have been unnecessary to preclude non-final review of institution decisions. Because § 314(d) is unnecessary to limit interlocutory appeals, ***it must be read to bar review of all institution decisions, even after the Board issues a final decision.***

*Id.* at 1276 (emphasis added).

This Court's holding in *Cuozzo* that section 314(d) "must be read to bar review of all institution decisions" necessarily disposes of Gemtron's arguments here. Gemtron tries to evade this outcome by artificially and unrealistically treating the institution decision referred to in section 314 as a purely "binary decision: whether or not to institute trial proceedings." (Opening Br. at 63.) The reality, however, is that the Board's institution decisions are far from binary. The Board has to decide, not just whether to review *any* issue, but whether to review each of the multiple issues raised in a typical IPR petition, which is likely to challenge multiple claims and to invoke multiple items and combinations of prior art. Deciding which if any of these issues to review is not an "additional determination[]" as posited by Gemtron (*id*. at 65); this *is* the institution decision,

58

and the *inter partes* review cannot proceed without it.  To proceed with the IPR,

the parties and Board need to know what is at issue.

Gemtron's unduly narrow reading is particularly inappropriate in view of

this Court's description of section 314(d) as a "broadly worded bar on appeal." *St.*

*Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375-76 (Fed.

Cir. 2014), *quoted in Cuozzo*, 778 F.3d at 1276.  It would be absurd to interpret the

statute as allowing the Director complete discretion over whether to review

anything but then limit the Director's discretion over what to review.  The result

would be to make the same decision whether to review an issue either reviewable

or non-reviewable depending on the mere accident of whether the issue was raised

by itself or in combination with another, meritorious issue for *inter partes* review.

Notably, Gemtron's interpretation of the *inter partes* review statute would be

more consistent with the language of the reexamination statute, which provides

that "[a] determination by the Director . . . *that no substantial new question of*

*patentability has been raised* will be final and nonappealable."  35 U.S.C. § 303(c)

(emphasis added)).  But Congress chose to use different and broader language

about the finality and non-appealability of decisions about institution of *inter*

*partes* reviews.  *See* 35 U.S.C. § 314(d).

Gemtron cites "claim construction" as an example of a supposed "additional

determination[] that the Board may in its discretion choose to undertake when

59

rendering an institution decision." (Opening Br. at 65-66.) Gemtron argues that "[n]owhere does the statute dictate that such additional determinations are unreviewable." (*Id*. at 66.) But Gemtron's analogy fails, because there would be no basis for reviewing a claim construction included in an institution decision unless the Board relied on that same construction as a basis for its final written decision. For example, imagine that the Board construed a challenged patent claim as part of its decision whether to institute an *inter partes* review and, as a result of that construction, the Board decided not to institute any *inter partes* review. Obviously, that decision—including the claim construction—would be non-reviewable under *Cuozzo* and section 314(d). Claim construction is not an "additional decision" to be reviewed in the abstract, but is merely a subsidiary part of either the institution decision or the final written decision—reviewable in the latter context but not the former. Insofar as the Board's decisions are directed to the institution of an *inter partes* review, appellate review of those decisions is unauthorized by the statute and indeed is prohibited by section 314(d).

### B.     The Board had good reason for not reviewing the Sikka application.

It is nonsense for Gemtron to say that "the status of Sikka as prior art is undisputed." Appellant's Br. at 69. On the contrary, SSW pointed out in its Preliminary Response that "Sikka is NOT available as prior art to the '561 Patent" because SSW's challenged patent claims "enjoy priority back to the earliest filed

60

provisional application on June 27, 2008, which is more than three months before the earliest date (i.e., October 7, 2008) to which Sikka claims priority." A219; *see* A1028. In its final decision, the Board confirmed that the June 27, 2008 provision provided adequate written support for each of the challenged claims. A12. Because Sikka was not early enough to qualify as prior art, it was not only redundant but irrelevant to the validity of SSW's claims. The Board's decision not to review Sikka was not an abuse of discretion, and the decision did not prejudice Gemtron in any way.

Gemtron argues for the first time on appeal that "the Second Provisional added new matter that for the first time introduced the use of a frit." Appellant's Br. at 24; *see also id.* at 70 n. 4 (asserting that the '273 application "never mentions a frit"). This argument is inaccurate and unsupported as well as untimely. (In addition, this argument is directed only to claim 13, the only challenged claim that requires frit. *See* A863-64 (claims 1, 13, and 25).)

Gemtron never contended before the Board that frit was new matter, and Gemtron cannot raise such a new argument for the first time on appeal. *See In re Watts*, 354 F.3d 1362, 1367-68 (Fed. Cir. 2004). While Gemtron did argue against giving the challenged claims the priority of the '273 provisional application, its arguments related entirely to other limitations, not the limitation for frit. *See* A126-29 (arguing that the provisional application did not support other limitations,

such as a "shelf panel having a generally flat top surface," a shelf panel "where the majority of the surface area of said top surface of the shelf panel is not hydrophobic," and the steps for manufacturing a shelf as recited in claim 25). Gemtron is not entitled to appellate review of its new argument about non-disclosure of frit, because this Court's "review of the Board's decision is confined to the 'four corners' of [the] record [before the Board]" and the Court "do[es] not have the benefit of the Board's informed judgment on [that] issue for [its] review." *Watts*, 354 F.3d at 1367-68.

Even if it were timely, Gemtron's argument that frit was new matter would fail for lack of evidentiary support.  Gemtron cannot cite any evidence to support its belated contention.  *See* Appellant's Brief at 24, 70 & n.4.  Still further, Gemtron's argument is wrong.  In reality, the '273 provisional application explicitly discloses applying or curing the claimed hydrophobic spill containment pattern using a host of different techniques, several of which include application of frit.  *See* A900-01.  For example, the provisional application discloses using "powder and liquid pyrolysis," "screen printing," and "glass powder."  *Id.*  For these reasons, even if the Court were to review the Board's decision about the Sikka application, the Board's decision not to review that application could not be considered an abuse of discretion.

62

## C.    The Board had good reason for not reviewing alleged anticipation by Angros.

As SSW pointed out in its Preliminary Response, Angros did not disclose all the features of the challenged claims.  For example, Angros did not disclose a shelf, as required by all three claims.  *See* A218; *supra*, Statement of the Case, part C1.  Therefore, it would have been a wasted effort for the Board to review whether Angros anticipated the challenged claims.  And the Board's decision not to conduct such a review did not prejudice Gemtron in the least.  There was no realistic prospect that the Board would find Angros to anticipate while at the same time finding that Angros was so different as to be non-analogous.  While Gemtron argues that theoretically anticipation and obviousness are "separate and distinct," Gemtron makes no showing of how the Board could have been expected to reach opposite results on anticipation and obviousness in this case.  *See, e.g*, Appellant's Br. at 67-69.  In view of the implausibility of such an outcome—as well as the weakness of Gemtron's anticipation argument—it cannot have been an abuse of discretion for the Board to decline to review anticipation.

# Conclusion and Statement of Relief Sought

The Board's findings were supported by substantial evidence, and it had multiple bases for rejecting Gemtron's contentions about obviousness.  Gemtron relied on non-analogous art and provided no meaningful evidence of

obviousness—only conclusions and hindsight.  The Board's Final Decision should be affirmed.

The Board's initiation determinations are not appealable and in any case were appropriate exercises of the Board's discretion.

If for any reason the Court holds the Final Decision to be deficient, it should remand the case, so the Board can decide the additional issues it did not reach.


Respectfully submitted,


/s/ Nathaniel L. Dilger
Nathaniel L. Dilger
William J. O'Brien
Kainoa Asuega
One LLP
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, California 92660
(949) 592-2870

Counsel for Appellee

# Certificate of Filing and Service

I hereby certify that on this 6th day of April, 2015, I caused this Brief of

Appellee to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

Marshall J. Schmitt
Gilberto E. Espinoza
MICHAEL BEST & FRIEDRICH LLP
Two Prudential Plaza, 180 North Stetson Ave., Suite 2000
Chicago, Illinois 60601
(312) 596-5828
mjschmitt@michaelbest.com
geespinoza@michaelbest.com

Andrew T. Dufresne
MICHAEL BEST & FRIEDRICH LLP
One South Pinckney St., Suite 700
Madison, WI 53701
(608) 283-0137
atdufresne@michaelbest.com

Counsel for Appellant

Nathan K Kelley- Associate Solicitor
Monica B. Lateef- Associate Solicitor
William LaMarca- Associate Solicitor
Scott Weidenfeller- Associate solicitor
OFFICE OF THE SOLICITOR, U.S. PATENT AND TRADEMARK OFFICE
Mail Stop 8
Post Office Box 1450
Alexandria, Virginia  22213
(571) 272-9035
Nathan.kelley@uspto.gov
Monica.lateef@uspto.gov
William.lamarca@uspto.gov
Scott.Weidenfeller@uspto.gov

*Counsel for Director- U.S. Patent and Trademark Office*

Upon acceptance by the Clerk of the Court of the electronically filed

document, the required number of copies of the Brief of Appellee will be hand

filed at the Office of the Clerk, United States Court of Appeals for the Federal

Circuit in accordance with the Federal Circuit Rules.

/s/ Nathaniel L. Dilger
*Counsel for Appellee*

# Certificate of Compliance

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      28.1(e)(2) or 32(a)(7)(B) because:

      [ X ] this brief contains [*13,886*] words, excluding the parts of the brief
      exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

      [    ] this brief uses a monospaced typeface and contains [*state the number
      of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
      32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

      [ X ] this brief has been prepared in a proportionally spaced typeface using
      [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

      [    ] this brief has been prepared in a monospaced typeface using [*state
      name and version of word processing program*] with [*state number of
      characters per inch and name of type style*].


Dated: <u>April 6, 2015</u>                         <u>/s/ Nathaniel L. Dilger</u>
                                                        *Counsel for Appellee*